**FILED**
**Dec 11, 2018**
**08:51 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **KELLY GAUTREAUX,** | ) | **Docket No. 2018-06-0366** |
| | ) | |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 11346-2017** |
| | ) | |
| **HERMITAGE HALL,** | ) | |
| | ) | **Judge Joshua D. Baker** |
| **Employer,** | ) | |

---

## AMENDED[1] EXPEDITED HEARING ORDER FOR
## MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

At an Expedited Hearing on October 30, 2018, Ms. Gautreaux requested temporary disability and medical benefits from head injuries suffered on February 5, 2017.[2] Hermitage Hall asserted her condition pre-existed her employment and any aggravation did not arise primarily out of and in the course and scope of her employment. For the reasons below, the Court holds Ms. Gautreaux is likely to prove causation of her injury at a hearing on the merits and orders Hermitage Hall to provide her the requested benefits.

---

[1] The Court enters this amended order to correct three typographical errors. The errors did not affect the Court's ruling. By this order, the Court rescinds it's previous order and all deadlines for appeal shall run from the date of this amended order.

[2] With the Court's permission, Hermitage Hall filed a motion to introduce additional medical records from Ms. Gautreux's treatment with Pi Beta Phi, and the Court postponed issuing its ruling before hearing the motion. Ms. Gautreux opposed the motion, arguing that the medical records were not admissible because they lacked a doctor's signature or an authenticating affidavit. She also argued the records are irrelevant to the current dispute. The parties argued the motion on November 15, 2018. The Court denies the motion because the records are not signed or verified by affidavit. *See* Tenn. Comp. R. & Regs. 0800-02-21-.14(2) (2018).

## History of Claim

Ms. Gautreaux worked as a mental health aid in Hermitage Hall's residential facility for troubled teenagers.[3] In January 2017, she attempted to restrain a resident from harming a younger teen. During the incident, the resident punched Ms. Gautreux several times. She received medical treatment and took three days off work to recover; then "everything was fine."

A few weeks later, the same resident recruited other residents to assault a young teen during a gathering for the Super Bowl. This aggression caused "a riot." Residents picked up chairs and assaulted other residents and staff. Ms. Gautreaux and another aid attempted to restrain the resident, but the resident kicked her in the head before she could immobilize her. Although stunned, she continued working.

Less than an hour later, after the staff settled the residents down, the resident attacked Ms. Gautreaux in the dormitory. The resident tackled her, grabbed her hair, punched her head repeatedly, and dragged her approximately ten feet. Ms. Gautreaux stopped work immediately and went to Nashville General Hospital. She then had follow-up care with Concentra. She testified she attempted to return to work under Concentra's restrictions but could not stop crying. Hermitage Hall instructed her to go home and eventually initiated temporary disability benefits.

Hermitage Hall authorized treatment, and Ms. Gautreaux chose otolaryngologist Dr. Mitchell Schwaber and neurologist Dr. Gary Strickland from panels. Dr. Schwaber concluded she suffered a vestibular injury from the work assault, assigned one-percent permanent impairment, and placed her at maximum medical improvement (MMI) on February 15, 2018. Dr. Strickland diagnosed post-concussion syndrome and recommended neuropsychological testing.

Dr. Strickland placed Ms. Gautreaux at MMI on August 10, 2017. In his final medical report, however, he made multiple notations specifying his opinion only concerned headaches. Despite the MMI declaration, Dr. Strickland recommended Ms. Gautreux remain "off work until seen by psychiatry." He referred her to psychiatrist Dr. Jeffrey Anderson and to "Julie Johnson for Psychotherapy per Neuropsyche treating recommendations." He further wrote, "I defer to these post-concussion experts with respect to need for additional therapy at Pi Beta Phi of Tennessee Rehabilitation Services. I also defer to these experts with respect to MMI and PPI."

Hermitage Hall did not authorize Dr. Strickland's referrals and stopped providing medical treatment and disability benefits. It denied Ms. Gautreaux's claim on February 8, 2018, citing multiple prior concussions, including a significant concussion in 2010

from playing college soccer. Hermitage Hall based its denial on neurologist Dr. Steven Graham's opinion that Ms. Gautreaux's condition pre-existed her work assault and was not primarily related to her work injury.

In his deposition, Dr. Graham, whom the employer asked to evaluate Ms. Gautreux, testified it is "unlikely" that her present condition is primarily related to her work injury. He reviewed her medical records and said he tested Ms. Gautreaux's memory, cognitive abilities, and ability to regulate her emotions by "basically having her describe her history of what happened to her in great detail" and generally examining her. He judged her complaints a year post-injury to be "far out of the range of expected" for a head injury without loss of consciousness. However, he acknowledged that patients who have previously suffered concussions are "more susceptible to developing future concussions" and that "a prolonged duration of symptoms" can "sometimes" occur with subsequent concussions. While he estimated he examined Ms. Gautreaux for about forty-five minutes, she described a cursory exam lasting ten minutes.

Psychiatrist Dr. Greg James Kyser evaluated Ms. Gautreux at her counsel's request. He testified via deposition that her present condition is primarily related to her work injury and that Dr. Strickland's recommendations were appropriate for further medical care. Dr. Kyser explained that Ms. Gautreaux's previous concussions left her susceptible to "worsening symptoms" and "at higher risk of developing long-term difficulties from another concussion." Regarding her ongoing post-injury complaints, he explained that "different people do differently and have different degrees of morbidity." He testified that she is not at MMI.

## Findings of Fact and Conclusions of Law

Ms. Gautreaux need not prove every element of her claim by a preponderance of the evidence to receive relief at an expedited hearing. Instead, she must present sufficient evidence that she is likely to prevail at a final hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court finds she carried this burden.

Ms. Gautreaux claimed an aggravation of a preexisting brain condition from previous concussion. However, an aggravation of a preexisting condition is not actionable "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2018). Regarding an aggravation of preexisting condition, an employer "takes an employee with all preexisting conditions and cannot escape liability when the employee, upon suffering a work-related injury, incurs a disability far greater than if she had not had a preexisting condition." *Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. 1996). Thus Ms. Gautreaux must show she would likely prevail in proving her workplace accident caused the aggravation and

3

resulted in her need for additional medical treatment.  *See id*. at §§ 50-6-102(14) and 50-6-239(c)(1).

Ms. Gautreaux argued she was particularly susceptible to suffering another brain injury because of past sports-related concussions as indicated by Dr. Kyser.  She requested temporary disability benefits from the denial date to present because Dr. Strickland took her off work until the experts he recommended examined her.  Hermitage Hall countered that Dr. Graham's opinion demonstrates Ms. Gautreaux's condition is not primarily related to her work injury.  It also asked the Court to deny her temporary disability benefits because she is at MMI, as treating physicians have ended "all active medical treatment," and the only treatment remaining is Dr. Strickland's psychiatry referral.  *See* Tenn. Code Ann. § 50-6-207(1)(E).  The Court finds Ms. Gautreux's opinion more persuasive.

Although Ms. Gautreux suffered from similar symptoms after her concussion in college and her work injury, her testimony, medical records, Dr. Strickland's referral, and Dr. Kyser's opinion support the finding that her condition worsened after this work injury and requires further medical treatment.  As an employer, Hermitage Hall accepted Ms. Gautreaux with all preexisting conditions.  It cannot escape liability for the medical treatment necessitated by the work because she previously suffered similar symptoms. *See Edwards v. Fred's Pharmacy*, 2018 TN Wrk. Comp. App. Bd. LEXIS 9 (Feb. 14, 2018) (Affirming trial court decision that employee would likely prevail in proving shoplifting altercation aggravated her preexisting mental condition.).

Further, the Court finds Dr. Kyser's opinion more convincing than Dr. Graham's. He examined Ms. Gautreaux more extensively than Dr. Graham and practices psychiatry, a field Dr. Strickland deferred to for determining MMI and permanent impairment. Additionally, both experts acknowledged that Ms. Gautreaux's sports concussions make her more susceptible to suffer a subsequent brain injury and a prolonged recovery.  For these reasons, the Court holds Ms. Gautreaux is likely to prevail at a hearing on the merits in proving causation and entitlement to additional medical treatment.

The Court must also determine whether Ms. Gautreaux is likely to prevail in proving entitlement to temporary disability benefits.  To recover temporary total disability benefits, Mr. Gautreux must show (1) she is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Jewell v. Cobble Constr. and Arcus Restoration*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Jan. 12, 2015).  An employee may recover temporary total disability benefits until the employee is able to return to work or attains maximum medical improvement. *Prince v. Sentry Ins. Co.*, 908 S.W.2d 937, 939 (Tenn. 1995).  The Court holds she carried this burden.

In the August 2017 record, Dr. Strickland referred Ms. Gautreaux to a psychiatrist for further evaluation and took her off work "until seen by psychiatry." The Court observed Ms. Gautreaux's mental fatigue and difficulty regulating emotions and anxiety, particularly after prolonged testimony. The Court finds her testimony credible, including her testimony that she cannot work. Given Dr. Kyser's opinion, Dr. Strickland's opinion that she should not work until evaluated by a psychiatrist, and her own testimony, the Court finds Ms. Gautreaux would likely prevail in proving her work injury temporarily and totally disabled her from working from February 8, 2018, until present, which is forty-three weeks. At Ms. Gautreax's compensation rate, this amounts to $17,157.00 in temporary total disability benefits.

For completeness, the Court will also address Hermitage Hall's two defenses to Ms. Gautreux's temporary disability benefits claim, neither of which is persuasive. First, Hermitage Hall contended Ms. Gautreaux's petition for benefit determination (PBD) lacked the specificity to satisfy Rule 8 of the Tennessee Rules of Civil Procedure, as she simply checked a box that read, "Employee has not been paid for missing work[.]" Regarding Rule 8, the Court cannot read and evaluate Ms. Gautreaux's PBD in a vacuum. She asserted Hermitage Hall failed to pay her for missing work, which is exactly what happened. Under the circumstances, the Court cannot find her PBD insufficiently provided notice that she intended to seek relief for Hermitage Hall's termination of her temporary disability benefits.

Additionally, Hermitage Hall argued Ms. Gautreaux cannot recover temporary disability benefits because the law presumes her to be at MMI as "all active medical treatment" has ended. *See* Tenn. Code Ann. § 50-6-207(1)(E). The Court disagrees. Dr. Strickland referred Ms. Gautreux for further treatment and deferred to the providers for determination of MMI and permanent impairment. Hermitage Hall declined to provide the additional treatment. Consequently, the Court cannot conclude that all active medical treatment ended, or that Ms. Gautreaux reached MMI.

The Court holds Ms. Gautreaux is likely to prevail at a final hearing in proving causation of her injury, and in proving her entitlement to ongoing medical benefits and temporary total disability benefits.

It is **ORDERED** as follows:

1. Hermitage Hall shall provide Ms. Gautreaux the medical treatment recommended by Dr. Strickland.

2. Hermitage Hall shall pay Ms. Gautreux accrued temporary total disability of $17,157.00, and shall continue payments at her weekly rate of $399.00 until she is released to return to work or placed at MMI.

3. **This matter is set for a status conference on Monday, February 11, 2019, at 10:00 a.m. (CST).** The parties or their counsel must call (615) 741-2113 or (855) 874-0474 toll-free to participate. Failure to call may result in a determination of the issues without that party's participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED ON DECEMBER 11, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

6

# APPENDIX

## Exhibits:

1. Medical records
2. Dr. Steven Graham's deposition transcript page 9
3. Ms. Gautreux's interrogatory responses
4. Medical records pages 170-176
5. Dr. A. Lee Lewis' letter dated March 27, 2018
6. Ms. Gautreux's Rule 72 declaration
7. Ms. Gautreux's deposition transcript
8. Dr. Graham's deposition transcript
9. Dr. James G. Kyser's deposition transcript

## Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Hermitage Hall's Prehearing Brief
5. Hermitage Hall's Motion for Leave to File Post Hearing Brief
6. Ms. Gautreux's Response to Motion for Leave to File Post Hearing Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on December 11, 2018

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Zachary Wiley, Employee's Attorney | | | X | zwiley@forthepeople.com rforrest@forthepeople.com |
| Chris Brooks, Greg Fuller; Employer's Attorneys | | | X | crbrooks@mijs.com ghfuller@mijs.com |

_____

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):** _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

**Appellee (Opposing Party):**_____ At Hearing: ☐ Employer ☐ Employee


Appellee's Address: _____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellee ***


## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the_____day of_____, 20 ___


[Signature of appellant or attorney for appellant]     _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ | per month | beginning _____ |
| SSI | $ _____ | per month | beginning _____ |
| Retirement | $ _____ | per month | beginning _____ |
| Disability | $ _____ | per month | beginning _____ |
| Unemployment | $ _____ | per month | beginning _____ |
| Worker's Comp. | $ _____ | per month | beginning _____ |
| Other | $ _____ | per month | beginning _____ |

LB-1108 (REV 11/15)                                                                                                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month  Medical/Dental  $ _____ per month

Groceries        $ _____ per month     Telephone       $ _____ per month

Electricity      $ _____ per month     School Supplies $ _____ per month

Water            $ _____ per month     Clothing        $ _____ per month

Gas              $ _____ per month     Child Care      $ _____ per month

Transportation   $ _____ per month     Child Support   $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____     (FMV) _____

Other                   $ _____     Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____